IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA.

        Plaintiff,

v.                                                                                            Case No. 25-CR-1430-MIS

LUIS JESUS ESCOBEDO-MOLINA,

        Defendant.

**REPLY TO GOVERNMENT'S RESPONSE TO ORDER TO SHOW CAUSE AND UNOPPOSED MOTION TO DISMISS COUNTS 2 AND 3 OF THE INFORMATION WITHOUT PREJUDICE AND RESPONSE TO SUPPLEMENTAL ORDER TO SHOW CAUSE**

Comes now the Defendant, Luis Jesus Escobedo-Molina, through his attorney of record, Assistant Federal Public Defender Victoria Trull, and replies to the Government's Responses in this case (Doc. 15 and 17) as well as the Court's request in Doc. 16. On behalf of her client, Undersigned counsel is unopposed to the Government's request to dismiss Counts 2 and 3 of the information without prejudice.

    A. **Client Communication**

Undersigned counsel's last communication with her client was in court on May 16, 2025. *See* (Doc. 7). At the time of the hearing, the Government had filed an information usurping the magistrate judge's order dismissing Counts 2 and 3. (Doc. 5). At that May 16th, hearing, Counsel and client discussed possible steps moving forward, including challenging Counts 2 and 3. Such challenges included possible dismissal.

Therefore, while Undersigned has not since spoken with Mr. Escobedo-Molina, she can affirm Mr. Escobedo-Molina would not be opposed to a dismissal of the pending Counts 2 and 3. We agreed with the Courts original dismissal in Doc. 5, and agree with dismissal in this case.

Given the recency of the option of pleading to the single charge at the time it was unknown what would proceed after the hearing. Undersigned provided client with her contact information. Undersigned counsel is not aware if or when her client was taken into either CBP or ICE custody and was unaware of the date of removal from the United States, but the Government has provided a proffer, Doc. 17 Ex 1, and there is no reason to believe it is inaccurate. Undersigned has heard that DHS will often not allow clients to take legal documents with them when they are picked up by DHS. It is unknown whether upon transfer to DHS custody (whether CBP or ICE) Mr. Escobedo-Molina was allowed to keep any letter, card or document provided by Undersigned Counsel, including contact information.

### B. Immigration Custody

There are two separate immigration enforcement entities operating in Southern New Mexico, both under the umbrella of Department of Homeland Security (DHS). First, is Customs and Border Protection (CBP), which has power to operate around land/sea borders, and the second is Immigration and Customs Enforcement (ICE), who operate anywhere within the United States. Within ICE, there is a division of Enforcement and Removal Operations, which effect deportations, removals, paroles, supervision, etc. Both

CBP and ICE have the power to issue detainers and both have the power to remove people. CBP can only remove people over land borders, like Mexico. While ICE can remove people anywhere. Thus, normally, if someone is not from Mexico, or the person is apprehended outside of the border area, they are transferred over to Immigration and Customs Enforcement to coordinate removal.

Despite the Government's assertion that he was transferred to ICE custody, Doc. 17, Undersigned does not believe that Mr. Escobedo-Molina was ever in the custody of Immigration and Customs Enforcement. Rather, Undersigned believes that his detainer was issued by Customs and Border Protection, not Immigration and Customs Enforcement, and that Customs and Border Protection picked him up and transported him to the border for removal without taking him to an Immigration and Customs Enforcement office to evaluate him for potential supervision and parole.[1] Because Undersigned does not believe he was ever detained by Immigration and Customs Enforcement, Undersigned would not have been able to communicate with him and an immigration detention center. Likewise, it does not appear that Mr. Escobedo-Molina was ever given the opportunity to request a bond or parole from Immigration and Customs Enforcement.

---

[1] From a discussion with both jail, ICE, and CBP personnel on a prior case, Undersigned learned that at least one detention center that services this Court, specifically will not honor detainers issued by Immigration and Customs Enforcement and will only honor those issued by Customs and Border Protection. However, Mr. Escobedo-Molina was not at that facility. But, CBP brought him into custody so it is assumed CBP issued the detainer, not ICE.

C.  **Mr. Escobedo-Molina Could Have Been Allowed to Remain in the United States**.

It is important to note that Mr. Escobedo-Molina had never been ordered removed prior to entering the United States in this case. At the point of entry, he had no order to be removed or deported. Rather, Customs and Border Protection apprehended him, placed him into custody and referred his case to the U.S. Attorney's Office for prosecution. An order of removal need not have been processed until *after* the termination of this case. If not, then what was the point of referring him for prosecution if CBP could not wait until the finality of the case?

Everyday, the Department of Homeland Security exercises its discretion to parole persons found near the border into the country – because they are minors, asylum seekers, material witnesses, etc. This parole power can be found in 8 C.F.R. § 212.5 and 8 USC § 1182(d)(5) (INA § 212(d)(5)(A)). Specifically, 8 USC § 1182(d)(5)(A) says:

> The Secretary of Homeland Security may… in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, … and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Mr. Escobedo-Molina is considered an applicant for admission. [2] Under 8 USC §

---

[2] An alien present in the United States who has not been admitted or who arrives in the United

1182(d)(5)(A), the Department of Homeland Security has the authority to parole him to the custody of his criminal proceedings until the purpose of the parole is complete – such as the conclusion of his case. By releasing Mr. Escobedo-Puente from the custody of the Department of Homeland Security to the custody of the Court, Mr. Escobedo-Puente should be permitted to be subject to any detention or supervision the Court deems necessary. Even releasing Mr. Escobedo-Puente into detention of another agency is a parole because Mr. Escobedo-Puente is no longer in the custody of the Department of Homeland Security. Arguably, the Department of Homeland Security found it a significant public benefit to refer him for prosecution and transfer his liberty interests to the discretion of another government agency (the Department of Justice and the Judiciary) rather than swift removal from the country. Mr. Escobedo-Puente should not have been removed until the purpose of his transfer from DHS custody was completed. That purpose was criminal prosecution.

    Furthermore, 8 CFR § 212.5(b) reiterates that persons detained pursuant to expedited removal under INA CFR 235.3(b) would only be released on a case-by-case basis for urgent humanitarian reasons or a significant public benefit. Classes of people that can be considered to parole, despite being subject to expedited removal, include persons with serious medical conditions, pregnant women, minors, witnesses or persons whose "continued detention is not in the public interest…" So, there are a number of

---

States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission. 8 USC § 1225(a)(1)

groups that are eligible to be released into the United States – even without Court oversight, as in this case – even though they are subject to removal.

The Department of Homeland Security had the option to evaluate Mr. Escobedo-Puente's case and determine whether additional supervision would be required. If after review, the Department could not find any reason to parole Mr. Escobedo-Puente, the other option would be to detain him. 8 USC §1225(b)(2)(A). Deportation is not the only option. Recently in *Biden v. Texas*, 597 U.S. 785 (2022), the Supreme Court discussed the options that DHS had when there was not enough space to effectuate mandatory detention. Parole and contiguous-territory return were alternatives to detention.[3] Here, DHS considered no options to maintain Mr. Escobedo-Molina's presence in the United States nor an option of returning him to Mexico with the option of paroling into the country at the time of his hearing. As seen by the prior Migrant Protection Protocols (MPP) also called the "Wait-In-Mexico" program, the government has the ability to bring in aliens through the Port of Entry for their immigration hearings. It is not clear whether The U.S. Attorney's Office made efforts to communicate and request that detainers be lifted or left unexecuted, that persons not be removed, or otherwise communicated that the cases were still pending versus allowing DHS to operate as usual without knowledge

---

[3] ICE also maintains an Alternatives to Detention (ATD) Program in many areas, including El Paso, for both adults in removal proceedings and those subject to a final order of removal. The program has an Intensive Supervision Appearance Program (ISAP) that include case management and technology to support compliance with release conditions and to increase court appearance rates. Alternatives to Detention | ICE, https://www.ice.gov/features/atd, Last accessed 7/8/25

of the pending cases.[4]

In its response, the Government cites 8 USC §1226(c)(4) to suggest that parole is only for material witnesses. (Doc. 17, p 2). However, Section 1226(c)(4) relates to the "release of an alien described in paragraph (1)." Section 1226 (c)(1) lists 1) persons who are inadmissible for committing a criminal offense listed in 8 USC §1182(a)(2) (which does not apply in this case); 2) persons deportable for committing multiple crimes, an aggravated felony, drug of firearm offenses; 3) someone deportable for having committed a crime of moral turpitude and sentenced to at least a year; 4) persons involved in terrorist activities; 5) persons who enter without proper documents or inspection and commit a theft offense or other assault. Only those who fall into those categories can be released if they are also witnesses.[5] This section only relates to non-citizens with prior criminal convictions that make them inadmissible or deportable. This section, entitled "Detention of Criminal Aliens" does not apply in this case as Mr. Escobedo-Molina does not meet the definition as he had none of the enumerated prior convictions. Undersigned does not

---

[4] It is also worth pointing out that there have been cases in this District where ICE, specifically, has allowed Defendants to remain out of detention while their cases are pending. Those defendants had prior removal orders and prior offenses. See. *US. V Rivas De La O* 22-cr-01046-MIS; US v. *Renteria-Bustamante*, 22-CR-623-KG

[5] So that the Court can view the entirety of the cited statute, it is copied here:
The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.  8 U.S.C. § 1226(c)(4)

believe that 8 U.S.C §1226 applies to Mr. Escobedo-Molina's case, rather 8 U.S.C. §1225 would be the most applicable.

However, even if the Court were to follow the Government's lead and opt to apply §1226, Counsel would note that §1226(a) applies to aliens who do not have any of those enumerated prior convictions. This section would apply to Mr. Escobedo-Molina, not the section cited by the government. In §1226(a) it states that the Attorney General may arrest and detain an alien pending a decision whether the alien is to be removed. It goes on to say that, apart from those criminal aliens mentioned in subsection (c) -which doesn't apply in this case-, the Attorney General can 1) continue to detain the alien, or 2) release the alien on bond or conditional parole. So, by the law the government believes applies in this case, section 1226, Mr. Escobedo-Molina would be eligible for detention, bond, or parole, and not only immediate removal.

### D.  Mr. Escobedo-Molina Should Not Have Been Processed for Prosecution

What is clear is the Department of Homeland Security doesn't know what it wants. On one hand, Border Patrol Agent Zachary Parlier, referred Mr. Escobedo-Molina for prosecution, according to his I-213, citing the presidential proclamation "Guaranteeing the States Against Invasion." The Agent referred this "invader" to the United States Attorney's Office who charged him with violating security protocols and trespassing onto military property for nefarious purposes. All pretty serious allegations. Foreign invaders, scheming to go onto military bases to do scary things. Perfect ingredients for a movie or pearl clutching. The curious thing is, if Mr. Escobedo-Molina is so bad, why remove him

before the prosecution could try and get a conviction? If these cases are so air-tight that the government refuses to dismiss the charges while the persons are here – through plea agreement or otherwise – why isn't the U.S. Attorney and the Department of Homeland Security working together to ensure these people get their day in Court and get convicted for the invaders and security threats they are?

One would think that ensuring "invaders" of military bases and our country are prosecuted and punished would be considered a "significant public interest"[6] or in the "public interest."[7] Since, the country needs to keep out the alien invasion and all.[8] However, it appears that neither the U.S. Attorney, nor the Department of Homeland Security think it is important to ensure all these "invaders" stand trial. Because, they just removed them without thinking twice. Also curious is the silence of the real alleged victim here – the U.S. Army – who had their "base" trampled upon. Does the Department of Homeland Security not care about our troops?

For argument's sake, upon review of the Presidential Proclamation, dated January 20, 2025[9], President Trump states that until the invasion at the southern border has ended:

> There is a suspension of entry: "…entry into the United States on or after the date of this order of aliens engaged in the invasion across the southern border is detrimental to the interests of the United States. I therefore direct that entry into the United States of such aliens be suspended

---

[6] See, 8 USC § 1182(d)(5)(A)
[7] See,, 8 CFR § 212.5(b)
[8] Compare to, MTV Entertainment Studios, *Southpark, Season 8, Episode 7 "Goobacks"*, aired 4/28/2004
[9] Guaranteeing the States Protection against Invasion, January 20, 2025, https://www.whitehouse.gov/presidential-actions/2025/01/guaranteeing-the-states-protection-against-invasion/

until I issue a finding that the invasion at the southern border has ceased."

Suspension of physical entry: "…I hereby suspend the physical entry of any alien engaged in the invasion across the southern border of the United States, and direct the Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, to take appropriate actions as may be necessary to achieve the objectives of this proclamation, until I issue a finding that the invasion at the southern border has ceased."

Actions to repel the invasion: "The Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, shall take all appropriate action to repel, repatriate, or remove any alien engaged in the invasion across the southern border of the United States on or after the date of this order, …, until I issue a finding that the invasion at the southern border has ceased.

Thus, based on the Presidential Proclamation, it appears Mr. Escobedo-Molina should not have been transported from the border further into the United States, when the President instructed officials to repatriate and remove any alien coming up through the southern border. Arguably, the prosecution of Mr. Escobedo-Molina is contrary to the presidential directive. The entry of Mr. Escobedo-Molina was suspended and DHS was supposed to remove him, but they took him from the border and moved him farther into the country. None of the following meets the directed action to repel, repatriate or remove:

- Transport north of the border, further into the United States

- Resource expenditure for extended detention, litigation of whacky charges, and trials where the government submits no evidence of said whacky charges.[10]

- Cost of signs that face a wall, placed inside the zone rather than outside, in violation of Army requirements for a Restricted or Controlled Area, that blow away in the wind or lean in the sand like an American at the beach when Cinco de Mayo falls on a taco Tuesday.

---

[10] See, United States v. Jose Flores-Penaloza 25-CR-1075-GBW

Mr. Escobedo-Molina should have been removed instead of prosecuted. An apprehension and immediate removal would have meet the goals of the presidential proclamation.

### E. Government Motion to Dismiss

Undersigned would argue that the government is not interested in prosecuting this case. The Department of Homeland Security referred this case to the U.S. Attorney for prosecution on the Entry without Inspection Charge. Interestingly, that is the only charge the CBP agent in this case mentioned Mr. Escobedo-Molina was being referred for. The agent gave him a warning about future entry into the zone and that future violations could lead to prosecution. But, he only referred Mr. Escobedo-Molina for a violation of 8 USC §1325. It appears that is the only offense they care about. Apart from this, DHS removed Mr. Escobedo-Molina from his attorney and away from his opportunity to resolve the case definitively.

While a dismissal with prejudice would be in the interest of justice because the government imposed charges that were found to lack probable cause without any additional information and then allow DHS to remove Mr. Escobedo-Molina negating the opportunity to challenge those charges that lacked probable cause. That said, Undersigned does not intend to fight over whether the dismissal should be with or without prejudice. Undersigned wanted the government to dismiss these charges, or more accurately, not bring the charges again after they were dismissed the first time. Undersigned does not opposed a dismissal without prejudice.

However, since the Government has brought up their gripe with the elements of the charges they are asking to be dismissed, Undersigned wants to be clear. In this case, the Government cannot prove Mr. Escobedo-Molina's guilt of Counts 2 or 3 beyond a reasonable doubt even under their proposed elements. Undersigned counsel notes she has made no admissions on behalf of her client in connection with her lack of opposition to the motion, has not entered any stipulations with the Government in this case on behalf of her client. Undersigned counsel agrees a dismissal of Counts 2 and 3 of the Information is in the interests of justice.

Wherefore, undersigned does not oppose the Government's motion to dismiss Counts 2 and 3 of the Information without prejudice in the interests of justice.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 S Main Street, Suite 400
Las Cruces, NM 88001
(575) 527-6930

***Electronically filed (July 8, 2025)***
By: */s/ Victoria Trull*